UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMARA J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:21-cv-00326-SEB-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

# **ORDER**

Plaintiff Tamara J. ("Tamara") has appealed the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her November 29, 2017, application for supplemental security income ("SSI"), alleging a disability onset date of February 27, 2017. R. (Dkt. 13) at 15. The application was initially denied on March 19, 2018, R. at 108, and upon reconsideration on July 24, 2018. R. at 120. An administrative law judge conducted a hearing on June 11, 2020, R. at 34-67, resulting in a decision on August 17, 2020, that Tamara was not disabled and thus not entitled to receive SSI. R. at 12-26. The Appeals Council denied review on December

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana uses only first names and last initials of non-governmental parties in Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

11, 2020.  R. at 1.  On February 9, 2021, Tamara timely filed this civil action seeking judicial review of the decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  Dkt. 1.

For the reasons explained below, we order a remand of this case.

## **Background**[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 416.920(a)(4)(i) to (v), in concluding that Tamara was not entitled to SSI.  R. at 26.  Specifically, the ALJ found as follows:

- At Step One, Tamara had not engaged in substantial gainful activity[4] since November 29, 2017, the application date.[5]  R. at 17.

- At Step Two, she had "the following severe impairments: fibromyalgia; plantar fasciitis; bilateral ankle bursitis; peroneal tendonitis; and obesity."  *Id*. (citation omitted).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  R. at 19.

- After Step Three but before Step Four, Tamara had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 416.967(a) except that she: can occasionally climb ramps or stairs, but never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; can never work at unprotected heights; can occasionally work around moving mechanical parts or operate a motor vehicle; can frequently be exposed to humidity, wetness, extreme cold or heat, dust, odors, fumes, or pulmonary

---

[3] The discussion of Tamara's medical history and treatment includes sensitive and otherwise confidential medical information that has been thoroughly detailed in the ALJ's decision and the parties' respective briefs.  To the extent possible, we detail here specific facts only as necessary to address the parties' arguments.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 416.972(a).

[5] SSI is not compensable before the application date.  20 C.F.R. § 416.335.

- irritants; and any time off task can be accommodated with up to 10 percent of a normal workday in addition to normal breaks." R. at 20.

- At Step Four, relying on the testimony of the vocational expert (the "VE") and considering Tamara's RFC, she was incapable of performing any of her past relevant work as a loan officer and demonstrator. R. at 24.

- At Step Five, relying on the VE's testimony and in light of Tamara's age (46 years of age on the application date), education (associate degree in general studies), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed in representative occupations like a food and beverage clerk, touch up screener, and patcher. R. at 25-26; 43.

## Standard of Review

Upon review of the Commissioner's decision,

> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Our review is limited to the reasons articulated by the ALJ in her decision. *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the credibility of witness, nor substitute our judgment for the Commissioner's. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## Analysis

Tamara presents two issues for review: whether (1) the ALJ provided an accurate and logical bridge from the evidence to her conclusion concerning Tamara's use of an

3

assistive device to ambulate, and (2) the ALJ's subjective symptom evaluation followed Social Security Ruling ("SSR") 16-3p.

### Ambulatory Aid

Tamara contends that the ALJ never mentioned that her primary care physician ordered a scooter for her to use to assist with ambulation. Dkt. 17 at 14. She also asserts that the ALJ overlooked, forgot, or ignored ample evidence that she used assistive devices because of significant foot pain. *Id*. at 14-15.

The Seventh Circuit has explained that "[t]he ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).

Tamara testified that she experienced chronic pain throughout her body, but her foot pain was the worst because her feet "constantly hurt." R. at 48. She stated that the pain increases "immediately" with standing and was "beyond excruciating" in less than five minutes. *Id*. She also testified that after standing for five minutes, she needs to sit for "normally like hours" or at least an hour. R. at 49. She estimated that she could walk for "two minutes as long as it's slow." R. at 50. She further testified that she uses a rollator walker and motorized scooter that were both prescribed, but she uses a cane "in the home some, too, because the rollator is a problem with getting through the doorways." *Id*.

The ALJ did not ignore the line of evidence.  She explained:

> I conclude the claimant has not established a medical need for the use of a cane or other assistive device on a regular basis.  While the claimant alleged a need for the use of an assistive device, the objective evidence shows that she generally demonstrates intact sensation and reflexes in the lower extremities as well as no documented strength-related deficits or use of an assistive device on examination (B9F; B15F; B16F; B20F; B21F).  Therefore, I have not incorporated an assistive device into the residual functional capacity.

R. at 24.  Throughout the decision, the ALJ repeatedly explained that Tamara "generally exhibited no documented gait-related abnormalities or use of an assistive device on examination (B1F; B6F; B12F; B16F)."  R. at 48.  Our review was made more difficult by the ALJ's citations to entire exhibits without providing specific page numbers.  One such exhibit, Tamara's specialized mental health treatment, (R. at 478-89 (Exhibit B12F)), which, no surprise, included no examination of Tamara's ability to ambulate.  On occasion, the ALJ did provide citations to specific pages of the record.  For instance, she explained that Tamara "exhibited no documented gait-related abnormalities or use of an assistive device (B6F; B16F/21-26)."  During one treatment visit cited by the ALJ, on January 3, 2018, Tamara was treated for abdominal pain, her abdomen was examined, her gait was not examined, and the treatment notes reflected that she was "sitting in [a] wheelchair."  R. at 558 (B16F/21).

Concerning a March 2018 consultative examination, the ALJ explained that Tamara "was using a wheelchair and had mild (4/5) weakness in both feet due to pain.  However, she could walk slowly without limping and gave minimal effort during parts of the examination."  R. at 22.  The examiner recorded that Tamara's gait was "normal but

slow.  She only walked a few steps. [. . .] She cannot stay on [her] feet for long.  She requested to sit down."  R. at 446.  The ALJ found that the consultative examiner's statement that Tamara could not stand on her feet for long periods was "only somewhat persuasive."  R. 23.  More to the point, this was the ALJ's only reference to the record as mentioning that Tamara used some kind of ambulatory aid.

     The record contains several references to Tamara's use of an ambulatory aid due to her plantar fasciitis pain.  On April 26, 2018, Tamara's primary care provider explained that she had tried physical therapy, custom orthotics, and home exercises for her plantar fasciitis "without relief," she was requesting a referral to pain management, and she was in a wheelchair.  R. at 552.  Tamara's physical therapist had explained in 2012 that Tamara's weight was the likely cause of her plantar fasciitis.[6]  R. at 495.  Her physician wrote an "order for [a] scooter to provide for better ambulation."  R. at 553.  On April 23, 2019, Tamara reported that her foot pain had "[w]ent [sic] away for a little while but [returned] more severe," she was "[a]ble to bear some weight but [her feet were] swollen and painful," and her endocrinologist said that the pain was not related to her diabetes mellitus.  R. at 541.  Tamara was referred to a podiatrist.  R. at 542.  On May 8, 2019, she again presented in a wheelchair for her doctor's appointment.  R. at 538.  The ALJ omitted any reference to Tamara's physician ordering her a scooter or her use of a wheelchair during treatment visits.  The ALJ also failed to acknowledge that Tamara's

---

[6] On April 23, 2019, Tamara was recorded as having a body mass index of 61.13.  R. at 541.

appearance at the consultative examination was consistent with her presentation during treatment visits.

 The ALJ's omissions might be excused based on her relevant findings concerning the line of the evidence, but for the fact that the ALJ's analysis of the relevant evidence was also inaccurate.  To illustrate: the ALJ explained—

> The claimant presented for a podiatry consultation during September of 2019 and complained of significant foot pain.  Nevertheless, she described pain measuring only four out of ten and indicated that her symptoms had improved.  Upon examination, the claimant displayed an unstable gait as well as tenderness and limited motion in both feet.  An ultrasound also showed inflammation of the proximal plantar fascia.  However, the claimant still exhibited normal strength, intact sensation, and no documented use of an assistive device.  She was diagnosed with plantar fascial fibromatosis, peroneal tendinitis, and bursitis.  She was encouraged to use orthotics to improve her pain, but indicated that she would not begin to do so until she returned from an upcoming trip outside of the country.

R. at 22 (citation omitted).  The podiatrist noted that Tamara's durable medical equipment history included that she had exchanged a tall-back walker for a medium short-back walker with a large liner on May 14, 2019.  R. 652.  Tamara reported that going barefoot and wearing flat-soled footwear made her pain worse.  *Id*.  She also reported that she could not go without a brace because her pain flared the following day.  *Id*.  She also explained that she was not tolerating her orthotics well because she still needed to break them in, and she was planning to do so when she returned to the country in November.  R. at 655.  She also stated that she was not tolerating her "Scott brace well," but was using an over-the-counter brace on her left foot.  *Id*.  The examination also showed gait "instability," R. at 653, and her provider gave her advice about managing "chronic lateral

ankle instability." R. at 655.  Contrary to the ALJ's analysis, the evidence shows that Tamara used a walker and foot brace, she had tried orthotics, and she had a specific gait-related abnormality on examination, *i.e.*, ankle instability.

    The SSA's guidance provides as follows:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  *The adjudicator must always consider the particular facts of a case.*  For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.  For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers.  On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

Social Security Ruling 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7 (footnote omitted and emphasis in bold in original but added in italics).  The VE testified that the sedentary exertional occupations that the ALJ ultimately concluded that Tamara could adjust to could only be performed by an individual who "needed a cane for walking."  R.

at 62.  Testimony was not solicited about the effects of needing other ambulatory aids like a walker, scooter, or wheelchair in specific circumstances.  The ALJ categorically concluded that Tamara would not need any ambulatory aid, but meaningful review of that finding is precluded because the ALJ failed to adequately address the relevant evidence in order to demonstrate that she considered all the particular relevant facts of Tamara's case.  Accordingly, remand is necessary for an appropriately fulsome analysis of Tamara's reliance on ambulatory aids.

### Other Arguments

Given our order of remand, we decline to examine whether the ALJ's subjective symptom evaluation was patently wrong.  The ALJ is requested to evaluate Tamara's subjective statements along with all the relevant evidence upon remand.

### Conclusion and Order

For the reasons explained above, the ALJ's decision is REVERSED and the case is REMANDED for further consideration consistent with this order under sentence four of 42 U.S.C. § 404(g).  Final judgment shall issue by separate order.  Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date:    9/15/2022

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Ashley D. Marks
Hankey Law Office
adm@hankeylaw.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
Hankey Law Office
kwold@hankeylaw.com